**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

JANICE S. LUCAS, individually and as the )
Surviving Spouse of James David Lucas, )
Deceased, )
                                     )
                 Plaintiff, )
                                       )
vs. ) No. CIV-11-163-FHS
                                       )
TEXAS INTERNATIONAL LIFE INSURANCE COMPANY, )
a foreign corporation, )
                                       )
                 Defendant. )

**ORDER**

Before the court for its consideration is defendant Texas International Life Insurance Company's (TILIC) Motion for Summary Judgment. (Doc. 46).  In that motion, defendant requests this court to enter a judgment finding in favor of the defendant regarding certain issues pertaining to insurance coverage. Defendant requests this court to find the specified items were not covered under the policy.  Plaintiff argues the items were covered and the defendant denied them in bad faith.  The court now turns to the merits of the motion.

**STANDARD FOR SUMMARY JUDGMENT**

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 ( c) See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party has the burden of demonstrating the absence of a

genuine issue of fact.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986).  If this initial burden is satisfied, the nonmoving party then has the burden of coming forward with specific facts showing there is a genuine issue for trial as to elements essential to the nonmoving party's case.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party cannot rest on the mere allegations of the pleadings, but must go beyond the pleadings and "set forth specific facts showing there was a genuine issue for trial as to those dispositive matters for which [it] carries the burden of proof." <u>Applied Genetics v. First Affiliated Securities</u>, 912 F.2d 1238, 1241 (10th Cir. 1990).

     "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Thomas v. IBM</u>, 48 F.3d 478, 486 (10th Cir. 1995) (quoting <u>Anderson</u>, 477 U.S. at 248).  In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party.  <u>Deepwater Invs. Ltd. v. Jackson Hole Ski Corp</u>, 938 F.2d 1105, 1110 (10th Cir. 1991).  This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249.  With these standards in mind, the court turns to the merits of the defendant's motion.

<u>I. Neupogen and Neulasta</u>

     The court finds the facts as follows.  In 1991, American

2

Liberty Life Insurance Company issued a Cancer and Dread Disease Hospital and Convalescent Policy, No. 365628, Form No. ACC-487-(C) to David Lucas. TILIC is a successor in interest to American Liberty Life Insurance.  In 2007, Mr. Lucas suffered a recurrence of lymphoma and was diagnosed with myelodysplastic syndrome (MDS). MDS is a hematologic (blood) malignancy.  Lymphoma and MDS are cancers covered by the policy.  TILIC's cancer claims were handled by a third party administrator AMR.  AMR handled the claims under the direction of TILIC. Chris Voss, on behalf of AMR, handled all of TILIC's cancer claims.

Mrs. Lucas submitted bills and records related to Mr. Lucas' cancer treatments to TILIC on or about December 31, 2007. A large portion of the claims had been denied by January 8, 2008. Included in the denials were claims for Neupogen and Aranesp. Mr. Lucas was prescribed Neupogen and Aranesp by oncologist Dr. Alan Keller for treatment of MDS and lymphoma, at a total charge of approximately $58,542,00.   Neupogen and Aranesp are approved treatments of that malignancy and also administered as a necessary part of chemotherapy to treat the lymphoma. Neupogen was imperative to administering the chemotherapy drug Revlamid, which leads to lower blood counts when used in lymphoma.  Mr. Lucas could not have received chemotherapy without Neupogen.

TILIC, through AMR and Chris Voss, denied the claims for Neupogen and Aranesp stating they were not chemotherapy drugs. In denying the claim, Voss did not request information from Dr. Keller or any health care provider related to any of Mr. Lucas' claims. Voss did not seek a medical review because she testified that she knew the drug was not a chemotherapy drug.  No supervisor reviewed Ms. Voss' decision to deny the claims.

The Lucas policy provided the following benefit:

> 8. RADIATION THERAPY AND CHEMOTHERAPY BENEFIT:
> ...The Company will pay the actual charges for cancericidal chemical substances and their administration for the purpose of modifications or destruction of abnormal tissue to the extent these charges are not covered under the Attending Physician Benefit.  This benefit is not payable fo physical examinations, checkups, consultations, treatment planning, diagnostic x-ray or other laboratory test related to the therapy.  No lifetime maximum.

Plaintiff alleges Neupogen and Aranesp were covered drugs under the terms of the policy. Defendant claims these are not chemotherapy drugs but rather used to bolster low blood cell counts that are caused by the disease itself.  As a result, defendant contends these drugs are not covered under the policy in question.

Under Oklahoma law, the interpretation and construction of insurance contracts constitutes an issue of law for the court to determine and resolve.  Dodson v. St. Paul Insurance Company, 812 P.2d 372, 376 (Okla. 1991). Parties may contract for risk coverage at will and are bound by the policy terms to which they agree.  Dodson at 376.  The terms of the policy, "if unambiguous, clear, and consistent," are construed so as to give reasonable effect to all of its provisions, and these provisions are given their plain and ordinary meaning and import. Id.

If the meaning of the contract terms are uncertain, or the terms can bear more than one reasonable interpretation, the terms are deemed ambiguous and must be interpreted most favorably to the insured and against the insurance carrier. Dodson at 376-377.  Insurance policies, in particular, are considered "contract

4

of adhesion because of the uneven bargaining opposition of the parties," and the court is to construe ambiguity or conflict in a policy strictly against the insurer. Spears v. Shelter Mutual Insurance Company, 73 P.3d 865, 868 (Okla. 2003). Oklahoma applies the doctrine of reasonable expectations "to the construction of ambiguous insurance contracts or to contracts containing exclusions which are masked by technical or obscure language or which are hidden in policy provisions." Max True Plastering Co. v. U.S. Fidelity and Guarantee Company, 912 P.2d 861, 868 (Okla. 1996).  "Under this doctrine, if the insurer or its agent creates a reasonable expectation of coverage in the insured which is not supported by policy language, the expectations will prevail over the language of the policy." Max at 864.  A policy term is ambiguous under the reasonable expectations doctrine if it is reasonably susceptible to more than one meaning. When defining a term found in an insurance contract, the language is given the meaning understood by a person of ordinary intelligence. Spears at 869. In other words, "when construing an ambiguity or uncertainity in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean." Spears at 868.

Defendant argues that Neopogen and Neulasta are not covered under the schedule of benefits because neither were administered to plaintiff for the purposes of "modification or destruction" of abnormal tissue. TILIC argues they were not used to administer chemotherapy as required by the terms of the policy. Defendant contends the drugs were administered to increase Mr. Lucas' low level of red blood cells a "condition" TILIC claims was caused by his leukemia. TILIC argues that Neupogen and Aranesp do not destroy cancer cells-they build blood platelets.  Defendant

argues the exclusionary provision of the policy expressly
excludes from coverage the drugs used to increase the number of
Mr. Lucas's red blood cells.

The court has reviewed all the pertinent language found
within the policy and finds the relevant policy language is
ambiguous.  Specifically, the court finds "cancericidal chemical
substances and their administration for the purpose of
modification or destruction of abnormal tissue" is ambiguous and
could have various meanings.  Accordingly, it must be interpreted
most favorably to the insured and construed strictly against the
insurer.  Dodson at 376.  Defendants themselves describe the Mr.
Lucas' decrease in blood count as a "condition", not a "disease
or incapacity" caused by his cancer. Further, plaintiff's
treating oncologist Dr. Keller testified the Neopogen was a
necessary part of his chemotherapy regiment. These drugs were
essential to administering an effective dose of Revlamid to
destroy the cancer cells.  The court finds that a reasonable
person in the position of the insured would have understood
Neupogen and Neulasta were a necessary component to the cancer
treatment and were used "for the purpose of modification or
destruction of cancerous tissue." Spears  at 868-869. Similar
language in other cases has been construed in favor of the
insured. See also Tomlinson v. Combined Underwriters Life
Insurance Company, 708 F. Supp. 2d 1284, 1291 (N.D. Okla. 2010)
(holding the policy language was ambiguous and that a reasonable
person would expect that Neupogen and Neulasta would be covered
as necessary to administration of chemotherapy, and that low
blood count is not a disease caused by cancer triggering an
exclusion) and du Mortier v. Massachusetts General Life Insurance
Company, 805 F. Supp 816, 822 (C.D. Ca. 1992)(holding that non-
cytotoxic caliberation drugs and other charges were covered by

the following policy provision: "The company will pay the usual
and customary charges for cancericidal chemical substances and
their administration for the purpose of modifications or
destruction of abnormal tissue.) In du Mortier, the court
concluded the provision covered not only the costs of the drugs
but the physician's charges to administer them.  Id. at 823.  The
court finds the policy creates a reasonable expectation in the
insured that coverage exits for the Neupogen and Neulasta.
Accordingly, the court denies the Defendant's Motion for Summary
Judgment on this issue.

## II. Blood Products

The court finds the facts as follows.  The Lucas Policy
also provided the following "Blood and Plasma Benefit":

> The Company will pay the actual charges for blood,
> packed red cells, whole blood, plasma, platelets
> and leucocytes.  Payment will be for actual
> charges paid for by the insured in the treatment
> of cancer but no payment will be made for blood
> plasma replaced by donors.

As a result of his cancer, Mr. Lucas received numerous
transfusions for the treatment of his cancer. TILIC denied many
of these charges either by ignoring the transfusion on the bills
submitted, denying charges for hospital stays because the
admission diagnosis was not cancer, or by denying charges for
outpatient transfusions as "Out-patient Hospital-non-covered
services." In a letter dated March 5, 2009, Ms. Voss, in an
effort to explain why the transfusions had been denied simply
stated "Blood:  100% of non-replaced blood (for covered hospital
admissions only)."  Testimony reveals there is no limit on the
blood policy provision except that it is for cancer.  In fact,

TILIC's claim handling auditors testified  an insured does not
have to be confined to the hospital to receive the surgical,
chemotherapy or blood benefits under the policy. There is no
basis to deny coverage under the policy for blood received for
treatment of cancer, even if the admit diagnosis was another
complaint. Now Ms. Voss is claiming that she denied the blood for
an entirely new reason: how the blood was coded.  However, the
court cannot consider this reason because it was not a stated
reason for denial during the claims process. TILIC may not rely
on a defense it did not assert during its denial of the claim.
Buzzard v. Farmers Insurance Company, Inc., 824 P.2d 1105, 1114
(Okla. 1991) and Newport v. USAA, 11 P.3d 191, 199 (Okla. 2000).
The only evidence relevant to the breach of contract claim or the
breach of the insured's good faith and fair dealing is "that upon
which the insurer relied in refusing payment." Buzzard at 1114.
As stated previously, under Oklahoma law, the interpretation and
construction of insurance contracts constitutes an issue of law
for the court to determine and resolve.  Dodson at 376. The terms
of the policy, "if unambiguous, clear, and consistent," are
construed so as to give reasonable effect to all of its
provisions, and these provisions are given their plain and
ordinary meaning and import. Id. The policy clearly states that
it will pay for actual charges for blood that is incurred by the
insured for the treatment of cancer.  This court has reviewed the
charges for blood product that have been submitted.  It appears
to this court that all the charges were incurred as a result of
treatment for cancer.  Under the terms of the policy, these
charges for blood should be paid.  The court further finds that
the charges incurred as a result of storage, delivery,
processing, in addition to the performance of the transfusion
itself should also be covered.  Spears at 868-869.  A reasonable
person would assume that coverage for blood would included full

coverage of blood products including the fees associated with storage, delivery, processing and the fees incurred with the transfusion itself. Id.   Accordingly, the court denies the defendant's motion for summary judgment on the issue of blood products.

### III.  Other benefits

Plaintiff has alleged that multiple other benefits were denied by TILIC.  These benefits range from attending physician benefits to mileage.

Plaintiff's policy provides for a Hospital Confinement Benefit of $100 per day for "each day a covered person is hospital confined due to a diagnosed cancer as herein defined...No lifetime maximum." The policy also provides convalescent income benefits of $30.00 per day of hospital confinement for the treatment of cancer, if hospital confinement exceeds seven days.   TILIC failed to pay the following benefits:

> 1.  Between July 10 and July 11, 2007, Mr. Lucas was admitted to St. Francis Hospital for a blood transfusion.  TILIC claimed his stay was for "outpatient hosp-non covered services."
>
> 2.  Between May 26 and May 30, 2007, Mr. Lucas was admitted to the hospital not simply for urethral stones but for diagnosis and treatment of lymphoma, MDS, and received blood products in the treatment of cancer.
>
> 3.  Between September 15 and October 1, 2007, Mr. Lucas was admitted to McAlester Regional Health Center with complaints of leg pain, thrombocytopenia, and leukemia, and was referred to a hematologist to consider cutaneous infiltration of lymphoma.
>
> 4.  Between August 16 and August 22, 2007, Mr. Lucas was admitted to MRHC for complaints of severe

gastritis, with a discharge diagnoses with gastroenteritis, MDS, and lymphoma.  TILIC claimed the admit diagnosis was not cancer and paid nothing.

Voss testified that she does not obtain medical authorization to address claims like the ones above. Instead she requests the insured to obtain a UB-92 form showing the admit diagnoses code.  If the admit diagnosis for the insured is not cancer, Ms. Voss maintains the claim is not covered, regardless of whether the patient received treatment for cancer.  Yet, she has paid claims before, despite the admit code, if she sees the insured getting serious treatment for cancer.  In contrast, Ortiz testified that if a patient were admitted for some other issue, but also received cancer treatment in the hospital, TILIC would cover the services for the treatment of cancer.  Ortiz also admits it would be improper to rely only on codes and nothing else to deny a claim. It would be improper not to obtain further information if the diagnosis code is not cancer, but the records indicate the treatment relates to cancer.

Plaintiff's policy also provided a $300.00 laboratory benefit per confinement to the hospital for treatment of cancer. TILIC paid no benefit for Mr. Lucas' February 20, 2007, admission for a transfusion at MRHC related to cancer, though he incurred $1,430 in lab charges.

Plaintiff's policy provided a surgical benefit for the treatment of cancer which provided for a $700 benefit on bone marrow biopsies or aspirations, and up to 25% of the cost of the surgery for anesthesia.  As reflected in the Bone Marrow Biopsy Summary, TILIC failed to pay any benefit for one biopsy at all, and then reduced the benefit payable to Lucas on two others, even where the cost exceeded $700.00. Notably, TILIC paid a daily

10

hospital confinement benefit on each of these outpatient
procedures, which discredits TILIC's claims that benefits,
including blood benefits, are only payable for inpatient
admissions.

Plaintiff's policy provided for up to $30.00 per day
attending physician benefit for services of a physician as a
result of cancer, when confined to the hospital.  On September
15, 2007, Mr. Lucas was admitted to the hospital for fifteen days
and incurred physicians charges on the bill, which TILIC denied
as emergency room physician charges, despite Mr. Lucas' obvious
admission to the hospital.

The policy provided a transportation benefit of $.30 a mile
for travel greater than 50 miles one way to a hospital or clinic
for a special type of cancer treatment which could not be
obtained locally and was authorized by an attending physical.
The policy also provided lodging benefits of $40.00 per day for
confinement to hospital for definitive treatment of cancer, as
long as the hospital was 50 miles from the insured's residence.
On July 10, 2007. Mr. Lucas was admitted overnight to St. Francis
Hospital for a blood transfusion.  Even though overnight stays
were sometimes necessary to receive platelets, TILIC paid no
travel, nor was a convalescent benefit paid.

The Lucas policy also provides for a "miscellaneous benefit"
of 10% of the total amount payable with respect to other benefits
under the policy.  TILIC had failed to pay miscellaneous benefits
owed on the numerous benefits TILIC wrongfully denied.

The terms of the policy, "if unambiguous, clear, and
consistent," are construed so as to give reasonable effect to all

of its provisions, and these provisions are given their plain and
ordinary meaning and import. Dodson at 376. The court finds the
insurance contract is clear and unambiguous as to the payment of
these items. Accordingly, the court denies the defendant's Motion
for Summary Judgment on these items as well.

## IV.  Bad Faith Claim

Defendant has sought summary judgment on the issue of bad
faith.  The mere allegation that an insurer breached the duty of
good faith and fair dealing does not automatically entitle a
litigant to submit the issue to a jury for determination. City
Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins., 804 P.2d 463,
468 (Okla.App.1990) and Oulds v Principal Mutual Life Insurance
Company, 6 F. 3d 1431, 1436 (10th Cir. 1993). A jury question
arises only where the relevant facts are in dispute or where the
undisputed facts permit differing inferences as to the
reasonableness and good faith of the insurer's conduct. Id. The
court finds there are disputed facts regarding the insurer's
conduct which would allow for differing inferences as to the
reasonableness and good faith of the insurer's conduct. City
National Bank and Trust Company at 468 and Oulds at 1436.
Finally, the court denies the defendant's motion for summary
judgment as it relates to the bad faith claims handling
practices.  The court finds there is sufficient dispute of
material fact as to this issue to preclude judgment.  Summary
judgment is therefore inappropriate on this issue and said motion
should be overruled.  Fed. R. Civ. P. 56; see, e.g., Celotex

 Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986) and
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505
(1986).


       IT IS SO ORDERED this 19th day of June, 2012.


                                    Frank H. Seay
                              United States District Judge

13