IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JANICE S. LUCAS, individually and as the )
Surviving Spouse of James David Lucas, )
Deceased, )
             )
                    Plaintiff, )
             )
vs.          ) No. CIV-11-163-FHS
             )
TEXAS INTERNATIONAL LIFE INSURANCE COMPANY, )
a foreign corporation, )
             )
                    Defendant. )

**ORDER**

Before the court for its consideration is defendant Texas International Life Insurance Company's (TILIC) Motion in Limine to Exclude Expert Testimony. (Doc. 69). In this motion, defendant seeks to exclude Plaintiff's witnesses Jim Schratz and Dr. Alan Keller as expert witnesses under the standards enumerated in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). On October 23, 2012, the court held a hearing on this motion. Plaintiff was represented by Charles D. Neal, Jr., and Michelle Harris.  Defendant was represented by Michael S. Linscott and Jeff Niese. Mr. Schratz and Dr. Alan Keller were present at the hearing and testified.  Evidence was also submitted.  After reviewing all the testimony and evidence presented, the court rules as follows on the motion.

The standard for the admissibility of expert testimony is found in Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Daubert/Kumho, the Supreme Court has placed upon the trial court a "special obligation" to ensure that a proposed expert's testimony is both reliable and relevant. Kumho, 526 U.S. at 147. This "gatekeeper" function requires courts "to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is scientifically valid and applicable to a particular set of facts." Goebel v. Denver and Rio Grande Western Railroad Company, 215 F.3d 1083, 1087 (10th Cir. 2000). This analysis applies to expert testimony based on technical or other specialized knowledge, such as medical testimony, and not just testimony based on classical scientific knowledge. Kumho, 526 U.S. at 141.

When undertaking this gatekeeper role, the court applies a two-step analysis. First, the court determines whether the proposed expert is qualified by virtue of his "knowledge, skill, experience, training or education." See Fed.R.Evid.702 and Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969 (10th Cir. 2001). Second, if the proposed expert is found to be qualified, the court must determine whether the expert's opinions are "reliable" as contemplated by Daubert/Kumho. Ralston, 275 F.3d at 969. Of critical importance to the reliability evaluation is whether the "expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid

the jury in resolving a factual dispute." Daubert, 509 U.S. at 591 (internal quotations omitted). Expert opinions "must be based on 'facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation....but absolute certainty is not required.'" Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1519 (10th Cir. 1995)(quotation omitted).

### DR. ALAN KELLER

First, it should be noted defendant does not object to Dr. Keller's treatment of Mr. Lucas or his qualifications to testify. Defendant objects solely to Dr. Keller's opinion that the drugs in question modify and/or destroy cancerous tissue in and of themselves in the context of hematologic (blood) malignancies. Defendant argues this opinion is not based on any factual data and as such is not reliable under the standards of Daubert. Defendant argues his conclusions have not been tested as required under the applicable standards. As a result, defendant argues his opinions are not helpful to the jury.

Evidence shows that Dr. Keller was Mr. Lucas's treating oncologist. He is board certified in internal medicine and oncology and has been treating patients for cancer and/or conducting clinical research in cancer treatment for over thirty years. Dr. Keller prescribed Neupogen and Aransep to treat Mr. Lucas' myelodysplastic syndrome (MDS) in conjunction with chemotherapy for Mr. Lucas' lymphoma. Dr. Keller testified that these drugs were prescribed because they modify and destroy malignancies associated with MDS. He testified these drugs were a necessary part of a chemotherapy protocol for Mr. Lucas' lymphoma.

Dr. Keller testified he formed his opinion that these drugs modify and/or destroy cancerous tissue in and of themselves in the context of hematologic (blood) malignancies based on experience as well as the facts that these drugs are recognized by peer groups and the FDA for treatment of this specific form of cancer.  He also cites the medical article titled *Hellstrom-Lindberg, Eva, et.al., Morphological Changes and Apoptosis in Bone Marrow from Patients with Myelodysplastic Syndromes Treated with Granylocyte-CSF and Erythropoietin*, Leukemia research, Vol. 21, No. 5, pp. 415-425 (1997) and research cited in that article to support this theory. He testified these drugs modify cancer cells because the cancer or malignancy within the cancerous blood cells are prevented from maturing and escaping the blood cells as they normally would.  Neupogen, Neulasta and Aransep modify the cancerous cells to allow them to mature, escape the marrow, function and then die.

Under the Daubert standard not every type of expert testimony requires scientific testing to be sufficiently reliable.  As the United States Supreme Court stated in Kumho Tire:

> ...the relevant reliability concerns may focus upon personal knowledge or experience....there are many kinds of experts, and may kinds of expertise...Our emphasis on the word "may" thus reflects Daubert's description of the Rule 702 inquiry as a flexible one.  Kumho at 594. "Testing is not necessary in all instances to establish reliability under Daubert." Bitler v. A.O. Smith Corp., 391 F.3d 1114, 1120 (10th Cir. 2004). Kumho, 526 U.S. at 149-150.

Defendant objects to Dr. Keller's opinions because it argues the opinions are not peer-reviewed or based on any identifiable study. The court disagrees with this assertion.  Dr. Keller testified the use of Neupogen, Neulasta and Aransep has been

4

peer-reviewed and is a recognized by the FDA as an acceptable treatment for this form of cancer.  Dr. Keller also testified that these treatments are within the standard of care for treatment of MDS set forth in the National Comprehensive Cancer Network Guidelines (NCCN), Version 1. 2012,.  The NCCN is a network of twenty-one of the nations top cancer treatment facilities, including MD Anderson, which shares information regarding cancer treatment. The Network provides continuing education to physicians regarding the treatment of cancer.  These guidelines are developed based on testing, and evidence through panels of expert physicians in the field of cancer treatments and reflect a consensus reached by these physicians on current approaches and standards for the treatment of cancer.  These guidelines are the standard of care for the treatment of cancer. The guidelines specifically recommended treatment of MDS with Neupogen and Aranesp.  Dr. Keller also testified that the Lindbergh paper supports his theory as well.  Finally, Dr. Keller has 30 years of experience as a physician treating cancer.  His experience and personal knowledge gained as a practicing physician also contributes to his knowledge in this area.

The court finds Dr. Keller's opinion regarding the use of Neupogen, Neulasta and Aransep for treatment of MDS is based on sufficient factual data and is sufficiently reliable such that he may testify to these matters at trial. Accordingly, the defendant's objection to Dr. Keller's testimony is overruled.

### JIM SCHRATZ

Defendant has also objected to the testimony of Mr. Jim Schratz arguing he does not have sufficient credentials or background to offer an expert opinion on claims under a cancer/

dread disease policy or standards for bad faith in Oklahoma. Defendant argues his background is in reviewing attorney fee bills and unrelated claims opinions. Defendant contends he does not appear to have any medical insurance claims handling expertise in Oklahoma. Defendant also objects to his testimony stating that his reliance on other expert opinions make his opinion unreliable. Further, defendant argues Mr. Schratz has not reviewed all necessary evidence to render opinions in this case.[1]

    Mr. Schratz was the Vice-President of Major Claims for the Fireman's Fund Insurance Company from July 1990 to December 31, 1993. In this job, he was responsible for case management of all cases throughout the world with a potential exposure of $3 million or more. While in this position he dealt closely with claims handling and the claims department of Fireman's Fund. While there, he also supervised litigation against Fireman's Fund. He reviewed hundreds of claims files from across the country to evaluate on behalf of Fireman's Fund whether those claims had been properly investigated or met or exceeded industry standards. In fact, Mr. Schratz had a long career of working internally for Fireman's Fund. Now, Mr. Schratz does expert work where seventy to eighty percent of his work is devoted to claims handling practices.

    Defendant has objected to Mr. Schratz testimony stating that he has no experience reviewing medical claims specifically cancer/dread disease policies. Mr. Schratz testified claims

---

[1] Defendant fails to identify the "other expert opinions" upon which Mr. Schratz relies and which if any documents Mr. Schratz has failed to review. Thus, the court must disregard this argument since defendant failed to clearly articulate it and support it with sufficient facts.

handling policies are the same regardless of the line of insurance. Mr. Schratz testified at the hearing that no matter what line of insurance all claims handling standards are the same.  Defendant has offered no evidence to refute this testimony.  Mr. Schratz will testify to an insider's view of what it is like to process a claim and how the process should work based on his opinion.

    The court finds  Mr. Schratz is qualified to testify to claims handling issues based on his knowledge, skill, training and education.  Mr. Schratz has extensive experience working with a major insurance carrier in all areas of claims handling.  He has also worked extensively in this area as an expert witness. Accordingly, the court overrules the defendant's objection to his testimony.

    IT IS SO ORDERED this 30th day of November, 2012.

*Frank H. Seay*
United States District Judge